IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| HATTIE DICKERSON, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 5:08-CV-392 (CAR) |
| | : |
| UNITED STATES DEPARTMENT | : |
| OF VETERANS AFFAIRS, et al., | : |
| | : |
| Defendants. | : |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Hattie Dickerson filed two complaints raising employment discrimination claims related to her employment at the Carl Vinson VA Medical Center. One raises claims of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The other raises claims of discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (Rehab Act). Defendants have made a motion for summary judgment in each case.

This is Dickerson's Title VII case. In describing the case, the Court will focus on the factual background as it pertains to Dickerson's Title VII claims, although some information regarding her medical condition will be necessary. The Court will present the facts in the light most favorable to Dickerson in this summary judgment posture. Having fully considered the matter, Defendants' Motion for Summary Judgment [Doc. 27] will be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court finds that Defendants failed to advance proper grounds for summary judgment on Dickerson's discrimination and retaliation claims; thus, Defendants' Motion for Summary Judgment is **DENIED** as to those claims. Defendants were

1

incorrect in their assertion that Dickerson failed to created a triable issue of facts as to claim that she was subjected to a hostile work environment when she was harassed by other nurses; thus, Defendants' Motion is **DENIED** as to that claim. However, Dickerson's contention that she was subjected to a hostile work environment when Defendants requested more medical information regarding her condition and assigned her to work on wards that were dangerous to her health is not the proper subject of a hostile work environment claim; thus, Defendants' Motion is **GRANTED** as to those claims.

I. FACTUAL BACKGROUND

Dickerson was hired as a staff nurse on December 21, 1997, at the Carl Vinson Veterans Affairs Medical Center in Dublin, Georgia ("the VA"). Dickerson is of Spanish and Native American descent. By all accounts, she was an excellent nurse and worked without incident until 2004.

On May 21, 2004, Dickerson reported to Vickie Watson, her direct supervisor, that African-American members of the nursing staff had fabricated a complaint of patient abuse against Julie Dean, a white licensed nurse practitioner on Dickerson's ward, Ward 19A. Dickerson also reported that Dean had been physically and verbally harassed. Although Dickerson asked for confidentiality, Watson revealed her identity when she questioned the accused harassers. As a result, Dickerson filed a grievance against Watson for revealing her identity and failing to handle the situation appropriately. On June 15, 2004, Associate Chief Nurse of Geriatrics Sylvia Kersey determined that Watson was justified in revealing Dickerson's identity.

The nurses Dickerson named in her report to Watson then began harassing her. They told her how difficult it was for them because they were black, and to "keep her f[]ing mouth shut."

2

They pushed medication carts into her, jabbed her with their fingers, spat on her, shut doors on her, cursed at her, and physically and verbally threatened her. On one occasion, they cornered her in a linen closet and hit her with pillows. They also refused to help Dickerson care for patients. Dickerson reported this harassment to Kersey, Assistant Chief Nurse Catherine Forrest, Associate Director for Patient and Nursing Services Sue Preston, Head of HR Teresa Lindsey, former Associate Director and Acting Director of the VA Kelly Duke, and Director of the VA Dick Fry. Despite her requests, Dickerson was not transferred to another ward. Whenever she was assigned to Ward 19A, she was subjected to harassment by the black nurses.

On November 19, 2004, Kersey completed an annual performance review on Dickerson. This performance review occurred after Dickerson's complaints following the Julie Dean incident and after Dickerson had suffered several medical incidents, as set forth below. On this evaluation, Dickerson's rating dropped from the previous year's rating of "high satisfactory" to a "satisfactory" rating. After receiving the evaluation, Dickerson filed a charge of discrimination with the EEOC.

Dickerson's medical troubles also began in 2004. In April 2004, Dickerson suffered a mild allergic reaction while working on Ward 19A. On July 24, 2004, Dickerson suffered her first severe allergic reaction while working on Ward 19A. It was first suspected that the reaction was the result of an insect bite. A few days later, however, Dr. Rahul Vangala noted that her symptoms had occurred before in the work environment and suggested that Dickerson be tested for an allergy to latex gloves.

When Dickerson returned to work,[1] she learned was being investigated for making fifteen

---

[1] Throughout this narrative of events, the Court will often refer to Dickerson returning to work some indeterminate period of time after a reaction. During her deposition,

3

medication errors on her July 24, 2004 shift. Dickerson believed another nurse had committed the errors and asked hospital management to investigate that employee. Although hospital management refused to investigate that employee, the charges against Dickerson were dropped.

In August 2004, Dickerson returned to work on Ward 19A. Two days after returning to work, she suffered a mild recurrence of her allergic reaction. Then, on September 14, 2004, Dickerson suffered another severe reaction on Ward 19A. At that time, the suspected allergen was either blue latex gloves or the special chemotherapy gloves that Dickerson was using.

In October 2004, Dickerson returned to work. Her physician Dr. Al-Shroof requested that she be placed somewhere other than Ward 19A. Dickerson met with Kersey regarding this request, and Kersey suggested she be temporarily assigned to either Ward 10A or 12A. Dickerson chose a temporary assignment to Ward 10A. After being reassigned, Dickerson suffered some residual effects from her prior allergic reactions while on Ward 10A, but Kersey would not reassign her off that ward. Then, on October 29, 2004, Dickerson suffered another allergic reaction. Dickerson stayed home for approximately five days before returning to work on Ward 10A.

After returning to work, Dickerson requested a permanent transfer to Ward 10A.[2] Kersey refused that request, and on December 10, 2004, she reassigned Dickerson to Ward 19A. On December 26, 2004, Dickerson suffered another allergic reaction. As a result, she missed several days of work in January. After again returning to work, Dickerson suffered another

---

Dickerson was usually unable to provide a definitive statement as to how much time she missed after each reaction. Instead, her story often moved directly on to the next reaction or employment related event. Thus, the Factual Background proceeds in the same fashion.

[2] She made this request even though she admittedly suffered an acute reaction on Ward 10A.

4

acute allergic reaction on February 3, 2005.

On February 10, 2005, Dr. Al-Shroof wrote a letter requesting that Dickerson not be made to work on any ward where she had suffered a previous reaction. When Dickerson returned to work on February 21, 2005, however, she was again placed on Ward 19A. That same day she suffered another acute allergic reaction.

On February 22, 2005, Dr. Mokhtar Hacena wrote a letter stating that Dickerson was experiencing allergic reactions to her work place, that the reactions did not occur at home or elsewhere, and that submitting Dickerson to a provocation test to identify a specific allergen was too dangerous. Dr. Hacena recommended that Dickerson be relocated to a unit where she had not suffered any previous allergic reaction because further exposure would likely result in more serious reactions. In spite of the letter, Dickerson was not moved until she sought assistance from the internal EEO office. Dickerson was eventually moved to Ward 12A.

Given the Court's disposition of Defendants' Motion, the remainder of the facts surrounding Dickerson's medical troubles are not particularly significant at this time. In short, Dickerson suffered more allergic reactions. She and the VA passed various memoranda and doctor's notes back and forth regarding her medical condition, her medical limitations, and whether there was any position in the hospital in which she could be reasonably accommodated.

Dickerson eventually stopped coming to work. As a result, the VA placed her on Absent Without Leave Status effective November 7, 2005. Dickerson continued to submit medical information in support of her request for a reasonable accommodation. Eventually the VA determined that due to her medical limitations, there was no position within the VA in which Dickerson could perform the essential functions of a Staff Nurse.

On January 9, 2007, Preston issued a notice of proposed action to remove Dickerson

from her employment because of a medical inability to perform the job of Staff Nurse. On February 15, 2007, Acting Medical Center Director Kelly Duke issued a removal decision terminating Dickerson from her position as a Staff Nurse effective February 8, 2007, based on a medical inability to perform the job of Staff Nurse.[3]

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986 ). A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52, 106 S. Ct. at 2511-12. When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers

---

[3] Dickerson, of course, disagreed with the VA's assessment that she could not be reasonably accommodated. Because that disagreement is not particularly relevant to the Court's disposition of this case, the Court has omitted much of the back and forth between the parties relating to that issue.

To the extent that any of those facts could be deemed relevant to the Court's disposition or the later review of this case by other courts, the Court incorporates and approves of the Factual Background as set forth in Case No. 5:08-CV-122.

to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553 (internal quotation marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact. See Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

### III. TITLE VII CLAIMS

Dickerson claims that she was subjected to racial discrimination, a hostile work environment, and retaliation, all in violation of Title VII.[4] Under Title VII, an employer may not

---

[4] Normally, a plaintiff's civil complaint is limited to the scope of the EEOC investigation that can be reasonably expected to grow out of the charge of discrimination. Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004). Courts have held that the presentation of a Title VII claim to the EEOC is not a jurisdictional requisite, but instead only a precondition to bringing a Title VII claim. See, e.g., Francis v. City of New York, 235 F.3d 763, 768-69 (2d Cir. 2000); Gibson v. West, 201 F.3d 990, 993-94 (7th Cir. 2000); accord Fouche v. Jekyll Island-State Park Auth., 713 F.2d 1518, 1525 (11th Cir. 1983) ("[A]ll Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than as jurisdictional requirements."). Because presentation of a claim to the EEOC is not jurisdictional, it is subject to waiver. See Francis, 235 F.3d at 769; Gibson, 201 F.3d at 993-94.

Having perused Dickerson's original pro se complaint and its attached exhibits in search of Dickerson's Title VII EEOC charge, the Court located the EEOC Decision dated June 2008. According to the EEOC's description of Dickerson's complaints in that decision, several of the claims that Dickerson raises in this Title VII case may well be beyond the scope of her EEOC charges. Defendants, however, failed to raise that argument in either their brief in support of their motion for summary judgment or their reply brief. Because the question of whether Dickerson's EEOC charge properly encompasses all of the Title VII claims brought in this case does not go to this Court's jurisdiction over those claims, the Court will not raise and consider the issue sua sponte.

"fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also contains an anti-retaliation provision which prohibits discrimination against any individual "because [s]he has opposed any practice made an unlawful employment practice by" Title VII, "or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. Id. § 2000e-3(a).

Defendants' argument regarding Dickerson's Title VII claims is, at best, cursory. Defendants chose to address Dickerson's Rehab Act claims and Title VII claims in a single twenty page brief that was docketed in both cases. In that brief, Defendants devoted less than one page of argument to the entirety of Dickerson's Title VII claims.[5] Laying aside Defendants'

---

[5] The Court also notes that Defendants' Statement of Material Facts as to Which There Is No Genuine Dispute contains few, if any, facts relevant to the Title VII claims. Instead, it focuses primarily on Dickerson's Rehab Act claims.

Having referenced Defendants' Statement of Material Facts, the Court also finds it necessary to remind Defendants of the form in which such a document is to be presented. Local Rule 56 provides: "The movant for summary judgment under Rule 56 of the Federal Rules of Civil Procedure shall attach to the motion a separate and concise statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact shall be numbered separately and shall be supported by specific citation to the record." M.D. Ga. L.R. 56. Facts not supported by specific citation to the record will not be considered by the Court. Id.

Defendants' Statement of Material Facts does not conform to these standards. Although some facts are presented separately, many are joined together in paragraph form. None of them are numbered. Roughly one-third of them are not supported by a specific citation to the record.

These standards exist to help both the parties and, more particularly, the Court identify and sharpen any factual disputes so that summary judgment motions may be decided in a clear, expeditious, and correct fashion. See M.D. Ga. L.R. Preamble ("These rules are intended to promote the just, efficient, and economical determination of cases pending in the Middle District of Georgia."). Failing to follow to these standards is a disservice to both the parties and the Court.

8

brief factual sketch of the situation, their legal argument was contained in three sentences. "There is no evidence whatsoever that [Dickerson's report to Watson regarding the Julie Dean incident] or anything else resulted in the various forms of discrimination and retaliation alleged by the Plaintiff." [Doc. 27 at 19]. "There is no evidence to link any of these alleged events [regarding other nurses harassing her in response to the Julie Dean incident] to anything that transpired between the Plaintiff and the Defendant concerning her employment issues." [Id. at 19-20]. "The Plaintiff has offered nothing more than an allegation unsupported by any evidence to support a genuine issue as to any material fact and therefore she has failed to meet her burden and the Defendant submits that she cannot defeat a motion for summary judgment." [Id. at 20].

The reply brief offers little more. There, Defendants state their disagreement with Dickerson's contention that she has established a prima facie case as to all of her claims. Defendants then address Dickerson's discrimination and retaliation claims as follows. "Any adverse employment the Plaintiff was subjected to was the result of her own actions, and not out of any discriminatory actions taken by the Defendant. The Plaintiff has not shown any connection between [the Julie Dean incident] and anything that occurred regarding her employment situation. There is no evidence whatsoever that this alleged incident or her reporting of it resulted in the myriad of discrimination and retaliation that she alleges." [Doc. 47 at 1-2]. Turning to Dickerson's hostile work environment claim, Defendants state that "there is likewise no evidence in support of her claims other than her own allegations. Unsupported by evidence, allegations alone cannot withstand a Motion for Summary Judgment." [Id. at 2].

As the movants seeking summary judgment, Defendants bear important burdens: they must show both that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Celotex Corp., 477 U.S. at 323, 106 S.

9

Ct. at 2553 (noting that the movant "bears the initial responsibility of informing the district court of the basis for its motion"). Defendants' argument on Dickerson's Title VII claims shirks that burden. In the years since Title VII was enacted, courts have developed useful analytical constructs that allocate burdens of production and persuasion and allow for the orderly treatment of Title VII claims. The Court will discuss these constructs as appropriate in sections III.A., III.B., and III.C. Defendants' argument eschews these useful analytical tools and simply makes the claim that Defendants' are entitled to judgment as a matter of law because there is no evidence to support Dickerson's claims. Defendants' arguments are little more than section headings or topic sentences for the discussion that should follow. They do little to grapple with the key issues of these Title VII claims.

Still, the Court is left to decide this motion. In doing so, the Court will give Defendants' argument the fairest reading possible. If Defendants' argument can be fairly read to raise a basis for granting summary judgment, and summary judgment is properly granted on that basis, then summary judgment will be granted. Otherwise, summary judgment will be denied, notwithstanding other possible arguments that Defendants could have made. It is the responsibility of the movant to identify his arguments, not the responsibility of the Court to imagine and apply them without prompting. See, e.g., U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation omitted)).

A.  Race Discrimination[6]

Dickerson contends that Defendants subjected her to a number of adverse employment actions because of her Spanish and Native American heritage: 1) Defendants gave her a substantially lower performance evaluation, 2) Defendants assigned her to tasks that black employees refused to complete, 3) Defendants assigned her to wards that endangered her health, 4) Defendants did not assist her in filing OWCP[7] claims, 5) Defendants did not accommodate her medical needs, 6) Defendants required her to pay back COP[8] leave and did not assist her in recouping her payments when her claim was later accepted, 7) Defendants placed her on AWOL status because of her work-related medical condition, and 8) Defendants terminated her.

Claims of racial discrimination based on circumstantial evidence are evaluated under the burden shifting framework developed in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). "To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her

---

[6] The parties do not address whether this a properly a case of race discrimination, national origin discrimination, or both race and national origin discrimination. To the extent Dickerson contends the above listed actions were taken because she is of Spanish descent, her claim sounds in national origin discrimination. The Court's own independent research indicates that other courts have also primarily treated discrimination because of an individual's status as a Native American as national origin discrimination.
   Defendants do not argue that Dickerson inappropriately labeled her claims as based on race discrimination, nor do they argue she is not a member of a protected group. That being the case, the Court will accept Defendants' apparent concession that these are properly considered race discrimination claims. In any event, the elements of the prima facie case and the shifting burdens of production and persuasion are the same whether Dickerson's claims are based on race or national origin.

[7] OWCP is an acronym for the Office of Workers' Compensation Programs.

[8] COP is a acronym for continuation of pay.

11

protected class more favorably than she was treated; and (4) she was qualified to do the job." Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). If the plaintiff can establish those elements, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment action. Id. Once the defendant discharges that burden, the plaintiff must ultimately prove that the articulated reason is a pretext for unlawful discrimination. Id.

Defendants have failed to raise a proper basis for granting summary judgment on Dickerson's race discrimination claims. In their reply brief, Defendants state their disagreement with Dickerson's assertion that she established a prima facie case of race discrimination in three words: "The Defendant disagrees." This is an assertion, not a legal argument. Looking for a more specific basis in the opening brief, the Court finds the argument that: "There is no evidence whatsoever that [Dickerson's report to Watson regarding the Julie Dean incident] or anything else resulted in the various forms of discrimination and retaliation alleged by the Plaintiff." And later, Defendants assert that: "There is no evidence to link any of these alleged events [regarding other nurses harassing her in response to the Julie Dean incident] to anything that transpired between the Plaintiff and the Defendant concerning her employment issues." These statements suggest that Defendants challenge whether Dickerson has produced evidence establishing a causal link between the Dean incident and subsequent harassment that Dickerson allegedly suffered after reporting it and the alleged discriminatory actions taken against her by Defendants

Unfortunately, this is the wrong sort of causation to defeat Dickerson's race discrimination claims. Dickerson's race discrimination claims are premised on the argument that Defendants took those adverse actions because Dickerson is of Spanish and Native American descent. Defendants in effect argue that there is no evidence that the alleged adverse

12

actions were taken for retaliatory reasons, but that argument is wholly unresponsive to the claim that they discriminated against Dickerson because of her Spanish and Native American background. In other words, even accepting Defendants' proposition as true, it does not negate any essential element of Dickerson's race discrimination claims. Because Defendants have failed to state a proper basis for granting summary judgment in their favor on Dickerson's race discrimination claims, the Motion for Summary Judgment is **DENIED** as to those claims.

The Court cannot read Defendants' opening or reply briefs to state any other bases for granting summary judgment on the race discrimination claims. Two statements in the briefs might be read as encompassing broader grounds than the Court has entertained, but read in light of other statements in the briefs, those broader readings do not follow.

First, in the opening brief, Defendants assert that there is no evidence that the reporting of the Dean incident or "anything else" resulted in the discrimination alleged by Dickerson. "Anything else" is so broad as to be meaningless. Taken to its logical extreme, it could be read to suggest that there is no evidence that anything caused the alleged adverse actions. Of course that is not true. Record evidence and reasonable inferences drawn from it suggest a number of reasons for the alleged adverse actions. In addition, any suggestion that "anything else" should be read to specifically encompass Dickerson's Spanish or Native American background is belied by two statements in the reply brief. There, Defendants drop the "anything else" catchall and specifically assert twice that there is no evidence of any connection between the reporting of the Dean incident and the alleged discriminatory actions taken against her.

Second, in the reply brief, Defendants state that: "Any adverse employment action that the Plaintiff was subject to was the result of her own actions, and not out of any discriminatory actions taken by the Defendant." While that statement might be a fine summation of

13

Defendants' position for a jury, it does not fairly raise the argument that the alleged discriminatory actions were not taken because of Dickerson's Spanish and Native American background. Even more so than "anything else," this broad pronouncement is best read as a precursor to the two sentences already quoted above which follow directly after it in the same paragraph, asserting no link between the Dean incident and any alleged adverse actions.

Title VII prohibits discrimination on several protected bases, including race and national origin. Dickerson clearly raises the claim that Defendants discriminated against her because of her Spanish and Native American background. If Defendants wish to challenge such claims on the ground that the actions were not based on Dickerson's protected characteristics, then it is their burden to say so. The burden is not a substantial one, but it is one that Defendants failed to meet in this case.

### B. Retaliation

Dickerson contends that Defendants retaliated against her for filing grievances and EEOC charges related to several workplace incidents by: 1) refusing to reassign her off Ward 19A where other nurses were allegedly harassing her as a result of the Julie Dean incident, 2) giving her a significantly lower performance evaluation, 3) assigning her to wards in violation of her medical restrictions, 4) obstructing her OWCP claims, 5) requiring her to file excessive medical documentation, 6) refusing to grant a reasonable accommodation for her medical condition, and 7) subjecting her to a work environment that caused her medical condition to worsen.

"To establish a claim of retaliation under Title VII . . . , a plaintiff must prove that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261,

1277 (11th Cir. 2008). The Eleventh Circuit "construe[s] the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Id. at 1278 (internal quotation marks omitted). "After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." Id. "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." Id.

As with the discrimination claims, Defendants' Motion for Summary Judgment fails on the retaliation claims as well. In the previous section, the Court construed Defendants' arguments as asserting that Dickerson had failed to produce any evidence establishing a causal connection between her report regarding the Julie Dean incident and the alleged discriminatory and retaliatory events. Dickerson, however, claims she engaged in several other instances of protected activity in addition to reporting the Dean incident. She states that she filed grievances and eventually EEOC charges regarding both the harassment she received at the hands of the other nurses and the substantially lower performance score she received, and that Defendants retaliated against her based on those actions. Defendants fail in both the opening and reply brief to challenge the sufficiency of Dickerson's evidence as to either of those assertions. As with the discrimination claims, Defendants have failed to assert proper grounds for granting summary judgment in their favor. As a result, Defendants' Motion for Summary Judgment must be **DENIED** as to Dickerson's retaliation claims.

    C.    Hostile Work Environment

Dickerson bases her hostile work environment claim on several courses of conduct: 1)

15

the alleged abuse she received at the hands of other nurses in response to the Julie Dean incident and 2) the VA's continued requests for more specific information regarding her allergic reactions and 3) its decision to place her on wards where she had previously suffered an allergic reaction.

Title VII protects workers from a "workplace . . . permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993) (citation omitted). The Eleventh Circuit has instructed that "a plaintiff wishing to establish a hostile work environment claim show: (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

In order to be actionable, the conduct in question must be "severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive." Harris, 510 U.S. at 21, 114 S.Ct. at 370. Moreover, the plaintiff must "subjectively perceive the environment to be abusive." Id. In evaluating the objective severity of the harassment courts should consider, "among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Miller, 277 F.3d at 1276.

Defendants make two statements that are clearly germane to Dickerson's hostile work

environment claims.  First, in the opening brief, Defendants state that: "The plaintiff further states that later these same African American employees subjected her to verbal and physical abuse[,] but there were no witnesses to any of these encounters other than the Plaintiff herself." In the reply brief, Defendants state: "As far as the hostile work environment the Plaintiff says was created by the African American nurses who allegedly harassed her, there is likewise no evidence in support of her claims other than her own allegations."  Fairly read, these statements suggest that Defendants are arguing that summary judgment must be granted in their favor because Dickerson has failed to produce sufficient evidence demonstrating that she was subjected to unwelcome harassment.

Defendants' argument suffers from fatal flaws.  The crux of the argument appears to be that Dickerson's statements, standing alone, are insufficient to create a triable issue as to whether the alleged events happened.  That is simply not so.  Had Dickerson come forth with only the allegations of her complaint in response to the claim that there was no evidence of these acts, Defendants' argument might be well taken, but Dickerson did more than that.  Dickerson pointed to her own deposition testimony in which she gave her first-hand account of these events. Defendants' do not appear to argue that Dickerson's own first-hand account of the instances of harassment is not admissible evidence.  If Dickerson were to present her story during trial, the jury would be free to disbelieve her account, but certainly her own deposition testimony is sufficient to create a triable issue as to whether the events happened.  Because Defendants incorrectly assert that Dickerson's own testimony is insufficient to create a triable issue as to whether these events happened, Defendants' Motion for Summary Judgment must be **DENIED** as to the claim that Dickerson was subjected to a hostile work environment based on the harassment she suffered at the hands of other nurses.

17

Defendants' arguments regarding Dickerson's hostile work environment claims do not even touch on Dickerson's contention that she was subjected to a hostile work environment when Defendants continually requested more medical information regarding her condition and assigned her to work in dangerous environments. Nonetheless, because those claims are facially insufficient as hostile work environment claims, the Court exercises its discretion to address them.[9]

The VA's continued requests for more definitive information regarding her medical condition do not constitute sufficiently severe or pervasive unwelcome behavior that would support a hostile work environment claim. The frustration of both sides is often apparent in the back-and-forth correspondence regarding Dickerson's condition. Nonetheless, the VA's conduct could only be considered unwelcome harassment in the sense that Dickerson disagreed with the VA's conclusion that more definitive information was needed. Her disagreement with the VA's conclusion, however, is best pursued through her Rehab Act claim, and if she feels the requests were made for discriminatory or retaliatory reasons, those claims are best pursued through her Title VII discrimination and retaliation claims. Dickerson indeed makes that argument in her retaliation claims. In any event, the give-and-take over the question of whether Dickerson had submitted sufficient documentation to determine if a reasonable accommodation for her condition existed cannot be transformed from a human resources dispute to severe or pervasive unwelcome harassment simply because Dickerson disagreed with the VA's position.

While perhaps a closer question, a similar analysis follows for Dickerson's claim that

---

[9] The Court notes it is not granting summary judgment on these claims without having heard from Dickerson on the issue. In her Response to the Motion for Summary Judgment, Dickerson presented relevant arguments regarding these two hostile work environment claims. Thus, in spite of Defendants' failure to address them, Dickerson has.

Defendants subjected her to a hostile work environment by placing her on wards where she had previously suffered a reaction. Hostile work environment claims target "workplace[s] . . . permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris, 510 U.S. at 21, 114 S. Ct. at 370. The challenged work assignments in this case were not instances of "intimidation, ridicule, [or] insult." In both her discrimination and retaliation claims, Dickerson advances the theory that Defendants acted contrary to her medical restrictions by assigning her to wards that endangered her health, and that these decisions were made on a discriminatory or retaliatory basis. Discrimination and retaliation, rather than hostile work environment, are the proper avenues for pursuing a claim based on alleged dangerous work assignments in this case. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Dickerson's claims that she was subjected to a hostile work environment when Defendants requested more medical information from her and assigned her to dangerous work environments.

## IV. CONCLUSION

As set forth above, Defendants' Motion for Summary Judgment [Doc. 27] is **GRANTED IN PART** and **DENIED IN PART**. Specifically the Motion is **DENIED** as to Dickerson's discrimination and retaliation claims, and her claim that she was subjected to a hostile work environment based on the harassment she suffered at the hands of other nurses. The motion is **GRANTED** as to Dickerson's claims that she was subjected to a hostile work environment because Defendants continually requested more medical information from her and assigned her to wards that were dangerous to her health.

19

SO ORDERED this 31st day of March, 2011.


S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT



bcw